944 So.2d 757 (2006)
Edwin HARRISON
v.
Olivia COOPER.
No. 2006-CA-0528.
Court of Appeal of Louisiana, Fourth Circuit.
November 8, 2006.
Karen Wiedemann, Wiedemann & Wiedemann, New Orleans, LA, for Plaintiff/Appellant.
Lucia G. Hawks, Law Offices of Harold G. Toscano, New Orleans, LA, for Defendant/Appellee.
(Court composed of Judge MAX N. TOBIAS JR., Judge EDWIN A. LOMBARD, Judge ROLAND L. BELSOME).
EDWIN A. LOMBARD, Judge.
Plaintiff/Appelllant/Lessee, Edwin Harrison ("Mr.Harrison") appeals from the trial court's judgment dismissing his case on the basis that he did not meet the burden of proving that his injuries were *758 caused by a defective ceiling in the apartment he rented from the Defendant/Appellee/Lessor, Olivia Cooper ("Ms.Cooper"). For the reasons stated herein, we affirm the trial court's judgment.
Relevant Facts
In May of 2001, Mr. Harrison informed his landlady, Ms. Cooper, that there was a problem with his bathroom ceiling. Ms. Cooper came to the house and observed a crack in the ceiling, which she reported to her insurer, Allstate Insurance Company ("Allstate"). An Allstate adjuster viewed the crack and took photos of it, which were entered into evidence in the trial court. Mr. Harrison claims that over the course of the next two to four weeks, the crack gradually worsened to the point that a 5 to 6 foot by 3 to 4 foot section of sheetrock was hanging down about 5 inches. According to Mr. Harrison, on June 12, 2001, he entered the bathroom to use the toilet and a 4 foot by 3 foot piece of the ceiling fell on him, injuring his neck and subsequently causing him to suffer severe headaches.
Trial Testimony
The matter proceeded to a bench trial before Judge Charles Imbornone. At trial, Mr. Harrison testified to his version of the accidentthat the ceiling, which, he claims, was hanging down about five inches, suddenly and without warning, fell on him. Mr. Harrison testified that did not recall seeing any water stains on the ceiling before it allegedly fell and that the sheetrock felt dry when it fell on him. He further testified that he had no idea why the ceiling fell. Mr. Harrison did not offer any witness or expert testimony at trial to support his contentions.
Ms. Cooper testified that she had lived in the house for the fifteen preceding years and that there were never any problems with the bathroom ceiling during that time, or at the time she rented it to Mr. Harrison. Ms. Cooper further testified that when she initially came to look at the ceiling at Mr. Harrison's request, she observed a crack in the ceiling that was sagging about an inch, but she did not see any leaks or discoloration on the ceiling. When she returned to see the ceiling after the incident, Ms. Cooper remembered seeing nails and dry insulation on the floor and jagged, torn edges on the fallen sheetrock.
Mr. Leonard Quick, a civil engineer practicing in the area of forensic engineering and failure analysis, was accepted as an expert by the court and testified on behalf of Ms. Cooper. Mr. Quick has extensive experience with sheetrock collapse and had been retained as an expert in over fifty sheetrock failure cases. He reviewed the photos taken by the Allstate adjuster before the accident as well as photos taken immediately after the incident by Mr. Harrison. Mr. Quick also reviewed Mr. Harrison and Ms. Cooper's deposition testimony. Based on the photos he reviewed, the deposition testimony, and his knowledge regarding construction in general, Mr. Quick came to the conclusion that the ceiling was intentionally pulled down and did not fall due to moisture, structural failure, or traffic vibration.
In Mr. Quick's opinion, the fact that there were no water stains on the ceiling before the accident and that the sheetrock that came down was dry, failure due to moisture was not the cause of the accident. In his opinion, the sheetrock did not fall due to vibration because the distance from the bathroom to the street was too great to cause this kind of failure. He was also able to rule out failure by improper installation because the photographs showed that the crack in the sheetrock was between two joists and not where the sheetrock was nailed onto the joists. Furthermore, he opined that had *759 improper installation of the sheetrock caused the ceiling to fall, the failure would have begun within a year of its installation, not fifteen or more years later.
In Mr. Quick's expert opinion, the accident could not have happened the way Mr. Harrison claimed it did. Mr. Quick explained that had the sheetrock fallen on its own, as Mr. Harrison claimed, it would have sheared off in a smooth straight line rather than with jagged edges and pieces dangling. Moreover, in Mr. Quick's opinion, given the weight of the piece of sheetrock that fell, it could not have remained suspended for weeks as Mr. Harrison claimed, but rather, would have fallen immediately. Mr. Quick opined that had the sheetrock fallen on its own, the nails would have remained in place and would not have fallen to the floor. Importantly, Mr. Harrison did not offer any evidence or testimony to refute Mr. Quick's testimony.
Judge Imbornone found in favor of Ms. Cooper and Allstate Insurance Company and dismissed the case. In his Reasons for Judgment, Judge Imbornone stated that, the court, "after hearing the testimony of the parties, the defendant's expert and reviewing all of the evidence presented, found the "defendant [sic] failed to carry the burden of proof to support his claim."
Mr. Harrison filed the instant devolutive appeal on January 17, 2006. On appeal, Mr. Harrison argues that the trial court should not have considered the testimony of Mr. Quick since Mr. Quick based his opinion only on photos of the accident and did not actually inspect the sheetrock in question. Mr. Harrison further argues that Mr. Quick failed to negate the other ways the sheetrock could have fallen.
Standard of Review
Mr. Harrison asserts that the trial court erred in finding that he did not meet his burden of proof that the defect in the ceiling was the cause of his injuries. Causation is question of fact. Estate of Adams v. Home Health Care of Louisiana, 00-2494, p. 1 (La.12/15/00), 775 So.2d 1064, 1066 (per curiam). The standard of review for the trial court's findings of fact has been clearly established by the Louisiana Supreme Court. A court of appeal may not set aside a trial court's factual finding unless that finding was manifestly erroneous or clearly wrong. Stobart v. State, through Dep't Of Transp. & Dev., 617 So.2d 880, 882 (La.1993). "Absent `manifest error' or unless it is `clearly wrong,' the jury or trial court's findings of fact may not be disturbed on appeal." Sistler v. Liberty Mut. Ins. Co., 558 So.2d 1106, 1111 (La.1990). "If the trial court or jury's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." Id. at 1112. Moreover, where there are two permissible views of the evidence, the fact-finder's choice between them cannot be manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840, 844-45 (La.1989).
Plaintiff's Burden of Proof
The issues herein are governed primarily by former Louisiana Civil Code Article 2695, which, at the time of the accident, provided: "The lessor guarantees the lessee against all vices and defects of the thing, which may prevent its being used even in the case it should appear he knew nothing of the existence of such vices and defects, at the time the lease was made, and even if they have arisen since, provided they do not arise from the fault of the lessee, and if any loss should result to the lessee from the vices and defects, the lessor shall be bound to indemnify him for the same." LA. CIV.CODE ART. 2695 (West 2001). To recover under Article 2695, it is *760 the lessee's burden to prove, by a preponderance of the evidence, that a defect existed in the premises and that the defect caused the damages. See Latham v. Aetna Casualty & Surety Co., 377 So.2d 350, 351 (La.1979).
Mr. Quick's Opinion Testimony
Mr. Harrison argues that the trial court should not have considered the testimony of Mr. Quick since Mr. Quick based his opinion only on photos of the accident and did not actually inspect the sheetrock in question. Louisiana Code of Evidence Article 702 provides that if specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, an expert witness may testify in the form of an opinion or otherwise. LA. CODE EVID. ART. 702. A trial court may accept or reject in whole or in part the opinion expressed by an expert. Green v. K-Mart Corp., 03-2495, p. 5 (La.5/25/04), 874 So.2d 838, 843. "The rule that questions of credibility are for the trier of fact applies to the evaluation of expert testimony, unless the stated reasons of the expert are patently unsound." Lirette v. State Farm Ins. Co., 563 So.2d 850, 853 (La.1990).
The trial court's finding that Mr. Harrison did not meet his burden of proof that the defect caused the ceiling to fall is not manifestly erroneous Mr. Harrison testified that he had no idea why the ceiling fell and he offered no expert testimony as to how and why it fell. It was reasonable for the trial court to accept, and give credence to, the testimony of Mr. Quick, the only expert to testify, that the ceiling was intentionally pulled down. Mr. Quick's opinion was based on photographic evidence of the accident scene as well as his specialized knowledge of sheetrock. Mr. Cooper made no objection to Mr. Quick being accepted as an expert witness in this field, and Mr. Cooper offered no expert testimony to refute Mr. Quick's opinion. Moreover, Mr. Harrison's argument that Mr. Quick failed to negate the other ways the sheetrock could have fallen is without merit. It is the plaintiff's burden to show, by a preponderance of the evidence, that the defect existed and that the defect caused the accident, and Mr. Cooper failed to meet his burden of proof. Therefore, the trial court was reasonable in denying recovery to the plaintiff. Accordingly, we AFFIRM the trial court's judgment.
AFFIRMED.